O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNAN K. IRISH,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 2:16-cv-03401-KES<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Shannan K. Irish ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying her application for Disability Insurance Benefits ("DIB"). For the reasons discussed below, the ALJ's decision is AFFIRMED.

**I.**

**BACKGROUND**

Plaintiff filed her disability claim applications on May 30, 2012, alleging the onset of disability on January 15, 2012. Administrative Record ("AR") 192-93. An ALJ conducted a hearing on September 15, 2014, at which Plaintiff, who was represented by an attorney, appeared and testified. AR 54-70. The ALJ published an unfavorable decision on October 3, 2014. AR 29-47.

1

1   The ALJ found that Plaintiff suffers from the severe impairment of "status post C4-6 and C6-7 discectomy and fusion (May 2012 [AR 333]); generalized anxiety disorder; major depression, recurrent; and neurotic excoriations from picking at skin." AR 34. Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with some additional exertional and mental limitations. AR 35. The mental limitations were "limitation to unskilled work not requiring interaction with the public, i.e., only incidental contact and minimal interaction with coworkers, i.e., can work side by side, but verbal collaboration should not be a primary component of the job." Id.

Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could not perform her past relevant work as a nurse at the county jail where she worked from 1996 until January 2012. AR 40, 214. Plaintiff could, however, work as a housekeeper or retail marker. AR 41. The ALJ therefore concluded that Plaintiff is not disabled. AR 42.

## II.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative

record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).

**A.     The Evaluation of Disability.**

A person is "disabled" for purposes of receiving Social Security benefits if he is unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). A claimant for disability benefits bears the burden of producing evidence to demonstrate that he was disabled within the relevant time period. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

**B.     The Five-Step Evaluation Process.**

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n. 5 (9th Cir. 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step

requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform his past work; if so, the claimant is not disabled and the claim must be denied. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. Id. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n. 5; Drouin, 966 F.2d at 1257.

## III.

## ISSUE PRESENTED

Plaintiff's appeal presents the sole issue of whether the ALJ properly considered the opinions of Plaintiff's treating psychiatrist, Dr. David Bot, M.D. Dkt. 32, Joint Stipulation ("JS") at 4.

# IV.
# DISCUSSION

**A.     The Treating Physician Rule.**

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Turner v. Comm'r of SSA, 613 F.3d 1217, 1222 (9th Cir. 2010) (citation omitted). This rule, however, is not absolute. Where the treating physician's opinion is not contradicted by an examining physician, that opinion may be rejected only for "clear and convincing reasons." Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999). Where, however, the opinions of the treating and examining physicians conflict, if the ALJ wishes to disregard the opinion of the treating physician, the ALJ must give "specific, legitimate reasons for doing so that are based on substantial evidence in the record." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citation omitted). See also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." (citation omitted)).

Here, Plaintiff saw other treating physicians besides Dr. Bot. Plaintiff received mental health treatment from her primary care doctors – first Dr. Weisenberger, then Dr. Linford – who prescribed her Prozac (anti-depressant) and Ativan (anti-anxiety). See, e.g., AR 296, 317 (2011 treating records); AR 330 (May 15, 2012 record); AR 260 (Plaintiff's DIB application, stating she had been taking anxiety medications since 1999). Neither of these doctors' records note that Plaintiff's anxiety or depression caused serious functional limitations. See, e.g., AR 439 (June 2012 initial visit for "depression"; Plaintiff reports a continuation of initial symptoms and "denies any aggravating factors"); AR 439-40 (Plaintiff will continue with Xanax, stop Prozac and start Cymbalta; she demonstrates "appropriate mood and affect"); AR 422-23 (2013 "follow up visit" for anxiety;

Plaintiff continues on Effexor and Xanax and demonstrates "appropriate mood and affect").

In May 2012, treating physician Jeffrey Larson of Coeur d'Alene Spine and Brain found Plaintiff had "fluent speech" with "no deficit of memory or mentation," and that her "attention span and concentration [were] adequate." AR 331; see also AR 343 (September 2012 treatment record noting "no memory loss"). In November 2012, treating physician Dr. Magnuson at the North Idaho Pain Management Clinic reported that Plaintiff presented as "non-anxious" with "grossly normal intellect." AR 370. He referred Plaintiff to a social worker for cognitive therapy, and in January 2013, the social worker noted that Plaintiff's memory, speech, affect, and though process were all within normal limits. AR 371-72.

Because Dr. Bot's opinions are contradicted by the findings of these other treating sources, under Andrews and Orn, the dispositive question is whether the ALJ gave "specific, legitimate reasons" for discounting Dr. Bot's opinions.

**B.      Summary of Dr. Bot's Medical Evidence.**

Dr. Bot's first saw Plaintiff on May 30, 2012. AR 465. Plaintiff had never previously received treatment from a psychiatrist. Id. Dr. Bot lives in Spokane, Washington. AR 472. Plaintiff testified that after she stopped working in California, she moved to Idaho because her father, a psychiatrist, lives there. AR 67, see also AR 364 (July 2012 treatment note from Dr. Bot). When that living arrangement "didn't work out," she moved back to California. AR 67. She apparently established her treating relationship with Dr. Bot while in Idaho and maintained it via telephone upon returning to California. See AR 62-63 (Plaintiff's testimony describing how she has had "telephone consults" with Dr. Bot for two to three months while she was looking for a new psychiatrist).

Dr. Bot provided several medical opinions in 2013 and 2014 concerning Plaintiff's claims for California benefits. See AR 398, 402, 404, 408. At the September 2014 hearing, Plaintiff testified that Dr. Bot was treating her with Xanax

and Effexor but "not really so much counselling or therapy." AR 62-63. Regarding her mental health medication, she testified that she was "really happy with where I'm at right now." AR 63. She also testified, however, that she could probably handle the exertional demands of light work, but her depression and anxiety kept her from job hunting. AR 61-64.

In August 2014, Dr. Bot completed a Psychiatric Impairment Questionnaire. AR 465. The Questionnaire defined a "moderate" limitation as one that "significantly affects but does not totally preclude the individual's ability to perform the activity." AR 467. A "marked" limitation was defined as one that "effectively precludes the individual from performing the activity in a meaningful manner." Id. Using these definitions, he rated Plaintiff's abilities in several functional categories. AR 468-70. He opined that Plaintiff would have moderate to marked limitation in the ability to perform activities within a schedule, maintain regular attendance, and be punctual. AR 468. He also opined that Plaintiff has moderate to marked limitations completing a normal workweek without interruptions from psychologically-based symptoms and performing at a consistent pace. AR 469. He opined that she would miss work more than three times a month due to her impairments. AR 471.

In a different form opining that Plaintiff meets Listings 12.04 and 12.06 for depression and anxiety, Dr. Bot indicated that Plaintiff is "markedly" limited in conducting activities of daily living, functioning socially, and maintaining concentration, persistence, and pace. AR 418. If the ALJ had accepted Dr. Bot's opinions, then no work would be available for a person with Plaintiff's RFC. JS at 7.

**C.     The ALJ's Reasons for Discounting Dr. Bot's Opinions.**

The ALJ first summarized Dr. Bot's opinions. AR 37-38. The ALJ then gave them "little weight" for being (1) internally inconsistent and confusing, (2) inconsistent with other medical evidence, and (3) relying heavily on Plaintiff's

7

discredited subjective complaints, as follows:

> While a treating physician's opinion is generally entitled to significant weight, that is only applicable if supported by objective medical evidence, and such is not the case herein. Dr. Bot certified that the claimant was permanently disabled with multiple moderate to market limitations (Exhibits 23F [AR 402-03] and 24F [AR 404-07]). Dr. Bot's opinions are not supported by his own progress notes and those of other treating and examining physicians that generally reflect positive response to medication. His opinions are also confusing and inconsistent (Exhibits 20F [AR 398], 23F [AR 402-03], 24F [AR 404-07], 25F [AR 408-21] and 28F [AR 465-72]), for instance stating he was uncertain whether the claimant would deteriorate in a work setting (Exhibit 28F [AR 470]). While asserting disability, he notes improvement, in July 2012 noting surgery helped the neck and the claimant was off opiates, and planning to return to work. The claimant has handwritten notes over records from Dr. Bot (Exhibit 20F [AR 398], 22F [AR 400-01]). … The opinions of Drs. Bot and Linford rely heavily on the subjective report and symptoms and limitations provided by the claimant, and the totality of the evidence does not support these opinions.

AR 40.

Elsewhere in her decision, the ALJ gave additional reasons for discounting Dr. Bot's opinions. She noted that the extent of Dr. Bot's treating relationship was seeing "claimant every month to six months and [he] was noted to treat the claimant by telephone." AR 39, citing Ex. 27F (see, e.g., AR 453). The ALJ found that such "treatment is inconsistent with the severity alleged, and Dr. Bot's own treatment records reflect that the [Plaintiff] never required psychiatric hospitalizations or emergency room treatment for symptoms." AR 39.

As a fifth reason, the ALJ noted that "claimant's activities throughout the period she alleges disability include traveling to Idaho and back, and in May 2012 she reported she was at the 'giddy stage' with a new boyfriend. She enjoyed family and did well with people, although she noted she had anxiety disorder since age 18. [AR 365.] These activities are inconsistent with the limitations alleged by the claimant and by Dr. Bot." AR 39.

### D. The ALJ Gave Specific and Legitimate Reasons for Discrediting Dr. Bot's Opinions, and These Reasons are Supported by Substantial Evidence.

#### 1. Reason One: Internal Inconsistency.

The ALJ may disregard a treating physician's opinion when it is internally inconsistent. Johnson v. Shalala, 60 F.3d at 1432-33; Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992) (concluding that internal inconsistencies and ambiguities within the doctor's opinion provided specific and legitimate reasons for the ALJ to reject the opinion).

Here, in February 2014, Dr. Bot opined that Plaintiff is "markedly" limited in her activities of daily living, social functioning, and maintaining concentration, persistence and pace. AR 407, 418. He further opined that she had suffered "one or two" episodes of decompensation, each of extended duration. Id. He checked this box rather than one labeled "insufficient evidence." Id.

His subsequent notes indicate Plaintiff was improving. In May 2014, he noted that Plaintiff was "feeling better" and "less scattered" on Effexor and "sounds good on phone." AR 453. He further noted that Plaintiff and her boyfriend "are doing well." Id. By August 2014, Dr. Bot did not find her markedly limited in any area of social functioning. AR 469. He opined that there was "no evidence of limitation" concerning Plaintiff's abilities to interact appropriately with the general public and maintain socially appropriate behavior. Id.

Dr. Bot's subsequent treatment notes are also inconsistent with his earlier notes. For example, despite his February 2014 note that Plaintiff had experienced

"one or two episodes" of decompensation, when asked the same question in August 2014, he wrote, "Uncertain. She last worked February 2012. This was 3 months before I met her." AR 470.

His notes are also inconsistent regarding Plaintiff's ability to return to work. In the July 2012 treatment note cited by the ALJ, Dr. Bot noted that Plaintiff "doesn't plan to return to work." AR 462. In November 2012, Dr. Bot estimated that Plaintiff could return to work in May 2013. AR 400. In 2014, however, despite the fact that his treatment notes indicated improvement in Plaintiff's condition, he opined that her mental impairments were so severe that she was disabled under Listings 12.04 and 12.06. AR 404-21; AR 403 ("poor prognosis for return to work").

Even within the same record, Dr. Bot sometimes gave inconsistent opinions. For example, in the Questionnaire, he did not check that Plaintiff has "poor memory" (AR 466), but he found her "moderately" limited in her ability to remember locations, work procedures, and detailed instructions (AR 468).

For all these reasons, the ALJ's finding that Dr. Bot's opinions are internally inconsistent is supported by substantial evidence.

### 2. <u>Reason Two: Inconsistency with Other Medical Evidence.</u>

Generally, the more consistent a medical opinion is with the record as a whole, the more weight that medical opinion should receive. 20 C.F.R. § 416.927(c)(4). ALJs may reject treating source medical opinions that are unsupported or inconsistent with other treating source evidence. <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding ALJ properly rejected a physician's opinion that was inconsistent with the record); <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (2001) (holding ALJ properly rejected treating physician's opinions that "were so extreme as to be implausible and were not supported by any findings made by any doctor").

Here, the ALJ noted that while Dr. Bot opined Plaintiff was disabled due to

her depression and anxiety, "other treating and examining physicians … generally reflect positive response to medication." AR 40. The other treating records generally discuss Plaintiff's medication for back pain rather than for depression or anxiety. Dr. Linford, however, noted twice that Plaintiff complained of depression or anxiety; each time, he adjusted or continued her medication, but did not make any other remarkable mental health findings. AR 439-40 (in June 2012, noting continuing symptoms of depression with "no aggravating factors" and continuing Prozac and Xanax), AR 422-23 (in October 2013, noting Plaintiff reported "anxious/fearful thoughts" and stopping Prozac).

In November 2012, Plaintiff told the Idaho pain management clinic that her anxiety and depression worsen with chronic pain, and she was referred to a social worker for cognitive behavioral therapy. AR 371. The social worker noted that Plaintiff "picks at her skin and hair which has caused sores," but she did not note any other behavior or symptoms outside normal limits. AR 372-73. Her treatment plan was therapy to achieve "stress reduction" and "emotion regulation skills." AR 373. Plaintiff, however, only met with the social worker that one time; she chose not to participate in the proposed cognitive therapy. AR 61-62 (Plaintiff's hearing testimony that she "wasn't into" the therapy because she thought the social worker was "a hypnotist or something").

In her Form SSA-3368, Plaintiff did not identify anxiety or depression as disabling conditions. AR 213. The only medication she was taking at that time (May 2012 [see AR 211, 216]) was pain medication. AR 215. At the hearing before the ALJ, she testified that she was "happy with where I'm at right now." AR 63.

These inconsistencies support the ALJ's second specific and legitimate reason for giving Dr. Bot's opinions little weight.

### 3. **Reason Three: Reliance on Plaintiff's Subjective Complaints.**

An ALJ may reject a treating physician's opinion if it is based "to a large

extent" on a claimant's self-reports that have been properly discounted as incredible. Tommasetti, 533 F.3d at 1041 (holding ALJ properly rejected treating physician's records that "largely reflect [the claimant's] reports of pain, with little independent analysis or diagnosis"). In this appeal, Plaintiff did not challenge the ALJ's adverse credibility determination as to the severity and limiting effects of her mental health symptoms.

The record supports the ALJ's conclusion that Dr. Bot was relying largely on Plaintiff's self-reported condition when drafting his opinions. For example, Dr. Bot diagnosed Plaintiff with "generalized anxiety disorder." AR 465. He identified Plaintiff's "primary symptoms" as "anxiety" and identified the "clinical findings" that supported his diagnosis as "anxiety." AR 467. When asked if Plaintiff is a malingerer, he answered, "no, though her motivation is limited." AR 470. He noted that Plaintiff last worked in February 2012, then opined that the "earliest date that the description of symptoms and limitations" in the Questionnaire applied was also February 2012. AR 470-71. He gave this opinion even though his own treatment notes indicate that Plaintiff has suffered from anxiety disorder since age eighteen. AR 365.

Similarly, Dr. Bot's progress notes generally record Plaintiff's opinions concerning whether she feels able to work. See, e.g., AR 457 ("doesn't feel up to working generally though wonders about trying"); AR 459 ("feels too anxious to work"); AR 362 ("doesn't feel she can do phone or desk job"[1]); AR 364 ("doesn't plan to return to work"). Nothing in the record suggests that Dr. Bot ever observed Plaintiff in a work-like setting or administered any psychological tests designed to measure anxiety, coping skills, or social skills. The record does reflect that despite

---

[1] In her application for benefits, Plaintiff characterized this as Dr. Bot's own opinion, saying, "My psychiatrist stated 'I cannot work a phone or desk job' due to my psychological limitations." AR 247.

12

reporting anxiety issues since the age of eighteen, see AR 365, Plaintiff graduated from high school, earned a nursing degree, and worked successfully in a stressful environment (i.e., a prison) for many years. AR 58. Thus, the ALJ's conclusion that Dr. Bot's opinion of total disability was based largely on Plaintiff's subjective complaints is supported by substantial evidence.

### 4. **Reason Four: Inconsistency with Treatment Plan.**

Where a treating physician recommends a course of treatment inconsistent with his/her opinion of total disability, an ALJ may rely on that inconsistency to discount the physician's opinion. See Rollins, 261 F.3d at 856 ("These are not the sort of description and recommendations one would expect to accompany a finding that [the claimant] was totally disabled under the Act"); see also Seltser v. Comm'r of SSA, No. 12-2590, 2014 U.S. Dist. LEXIS 42676, at *6, 2014 WL 1292904, at *23 (S.D. Cal. Mar. 28, 2014), aff'd, 633 F. App'x 461 (9th Cir. 2016) (fact that treatment of claimant was mostly by telephone made medical opinion that claimant had marked limitations less credible).

Here, the ALJ noted that, although Dr. Bot began treating Plaintiff in November 2012, his treatment of Plaintiff had switched to telephonic sessions by about February 2014. AR 36, 38; see also AR 455 (February 2014 record noting, "call in a couple days"). He continued to prescribe mental health medications for her, although he noted that she would run out early and demonstrated "little responsibility" in adhering to the prescribed dosage. AR 458. He did not explain cognitive therapy or follow up to ensure that Plaintiff received it, although it was recommended by the pain management clinic and was part of his own treatment plan. AR 371-73, 402-03; AR 61 (Plaintiff's testimony that she thought cognitive therapist social worker was "a hypnotist or something"). Plaintiff has not seen any psychiatrist or therapist other than Dr. Bot and the social worker, and she acknowledged that Dr. Bot does "not really so much" provide "counselling or therapy." AR 61-63. At the September 2014 hearing, she indicated that she was

seeking to transition to a California psychiatrist, but she had not done so yet. AR 62.

This kind of *laissez-faire* mental health care is inconsistent with Dr. Bot's opinion that Plaintiff has "marked" limitations in major functional areas and is precluded from all work by her anxiety. Thus, the ALJ's third reason for discounting Dr. Bot's opinions is supported by substantial evidence.

### 5. Reason Five: Inconsistency with Plaintiff's Activities

ALJs may reject medical opinions that are inconsistent with other evidence of record, such as the claimant's activities. Morgan v. Comm'r of SSA, 169 F.3d 595, 601 (9th Cir. 1999); see also Fisher v. Astrue, 429 F. App'x 649, 652 (9th Cir. 2011) (concluding that conflict between a doctor's opinion and the claimant's daily activities was a legally sound reason to discount the doctor's opinion); Rivera v. Colvin, No. 13-160-JC, 2013 U.S. Dist. LEXIS 105301, at *21 , 2013 WL 3879722, at *7 (C.D. Cal. July 26, 2013) (upholding ALJ's rejection of medical opinion that plaintiff could do no lifting at all, where plaintiff testified that he could lift "[m]aybe five pounds, maybe a little less.").

The record reflects that Plaintiff lives with her boyfriend in an RV owned by her parents. AR 57, 221. In May 2012, she told Dr. Bot that she was "giddy" over her relationship with her boyfriend, and that she "enjoys family well and people." AR 365. In her disability benefits application, she described her boyfriend as a "caregiver" who is willing to help her by driving her to medical appointments and doing other tasks. AR 221, 223. She stated that she spends time everyday talking with her boyfriend and parents. AR 227, 244.

In October 2012, on a medical history form for the North Idaho Dermatology Clinic, she checked "no" as to psychological disorders. AR 384. She received cosmetic Botox treatments. AR 389, 393.

In her disability application, she report that, despite her anxiety, she can use a computer for online shopping. AR 222. She can also pay bills, handle a bank

account, and use a checkbook. Id. She cooks two or three times a week, or every other day. AR 226, 241; see also AR 459 (December 2012 treatment note reporting that she makes dinner 25% of the time). She can do some laundry and dusting. AR 226. She participated in physical therapy. AR 445.

At the 2014 hearing, she repeatedly testified that despite persistent pain, she could physically perform the exertional demands of light work, but she felt unable to work because of her anxiety. AR 60-61 (testifying that she "was thinking about doing … some kind of computer management job from home" but her psychiatrist told her "it's not a good idea for [her] to do that right now … because of [her] long history of my generalized anxiety disorder … and [her] depression"), AR 65-66 (testifying that she could perform a desk job if she could change positions and take breaks, and agreeing that "the real issue … is getting this anxiety and depression under control"). She testified that while she was previously able to work despite her anxiety, she feels it has "really just gotten out of control as I've gotten older." AR 60; see also AR 259 (disability benefits application stating, "I have had GAD [generalized anxiety disorder] since 1999" and "it is getting worse each year I age"). She testified that her anxiety causes her to "freak out …even just going into a gas station" or "the grocery store." AR 66. Sometimes after she goes out, however, she feels better. AR 67.

Plaintiff's activities, particularly her ability to maintain relationships, is not consistent with Dr. Bot's opinion that she is "markedly" limited in maintaining social functioning. AR 407, 418. Rather, her activities are consistent with an RFC that limits her need to interact with strangers, but does not entirely preclude her from working; this is the RFC of which the ALJ found Plaintiff capable. See AR 35 (finding Plaintiff could perform "unskilled work not requiring interaction with the public, i.e., only incidental contact[,] and minimal interaction with coworkers. i.e., can work side by side, but verbal collaboration should not be a primary component of the job"). While Dr. Bot opined that she would miss too much work

to maintain employment, his opinion did not consider whether Plaintiff would experience the same level of workplace stress (and consequent absenteeism) if her working environment were limited as described by the ALJ's RFC. AR 471.

Thus, the ALJ's fifth reason for discounting Dr. Bot's opinions is also supported by substantial evidence.

## V.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: October 23, 2017

_____
KAREN E. SCOTT
United States Magistrate Judge